**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:

| | |
|---|---|
| TIMOTHY RICHARD MOORE, | CASE NO.: 15-06303-5-SWH |
| HEATHER DAVIS MOORE, | CHAPTER 11 |
| DEBTOR(S) | |

**MODIFICATION OF PLAN OF REORGANIZATION**
(Modification Applicable to Classes 3, 4, 5 & 6)

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtors hereby submit the following Modified Plan of Reorganization ("Plan"):

## I. SUMMARY OF PLAN

The Plan contemplates a reorganization of the Debtors' debts. In accordance with the Plan, the Debtors intend to satisfy all creditor claims from income earned through continued employment.

The Debtors' Plan is based on the Debtors' belief that the interests of its creditors will be best served if they are allowed to reorganize their debts.

## II. DEFINITIONS

1. "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Section IV, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3. "AVAILABLE CASH" shall mean the total cash available for distribution on the Effective Date.

4. "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

1

5.	"BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.	"CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

7.	"CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.	"CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

9.	"CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

10.	"CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.	"COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12.	"CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.	"DEBTOR" shall mean the Debtors identified on the first page of this Plan.

14.	"DISBURSING AGENT" shall mean the person selected by the Court who shall perform the duties and have the rights and obligations described herein. In the event no party is selected by the Court, the Disbursing Agent shall mean the Debtors.

15.	"DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.	"DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.	"DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

18.	"EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

19. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expired; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

22. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

23. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

24. "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

26. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

28. "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtors have commenced the distribution of initial Plan payments to all creditor classes.

29. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

### III. CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said class

is impaired or unimpaired, and proposes the following treatment:

  A. **Class 1 - Administrative Costs:**

  (1) Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to Sections 503, 506, and 507 of the Bankruptcy Code.

  The following claims of professionals will be paid subject to Court approval:

  Richard P. Cook, PLLC - Attorney for Debtor

  (2) Impairment. This class will be unimpaired.

  (3) Treatment. Flat fee agreement approved by the Court [Docket Entry No. 48].

  B. **Class 2 – Ad Valorem Taxes:**

  (1) Description of Claims.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtors are aware of the following claim in this Class:

  a. Pender County Tax Collections:  Ad valorem property taxes of $41.76. [Claims Register No.2].

  b. Pender County Tax Collections: Ad valorem property taxes of $41.76 [Claims Register No. 3].

  (2) Impairment. This class will be unimpaired.

  (3) Treatment. All claims in this class will be paid in full within thirty (30) days of the Effective Date of the Plan.

  C. **Class 3 – Tax Claims:**

  (1) Description of Claims.  Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. The Debtors are aware of the following claim(s) in this Class:

  a. Internal Revenue Service: Total balance owed - $13,872.74 (priority balance owed of $11,556.29; general unsecured balance owed of $2,316.45) [Claims Register No. 1].

  b. Comptroller of Maryland: Total balance owed - $954.00 (priority balance owed of $890.00; general unsecured balance owed of $64.00) [Claims Register No. 7].

(2)   Impairment. This class will be impaired.

(3)   Treatment.  The Debtors propose the following treatment:

**Unsecured priority tax claims**, described in Section 507(a)(8) of the Bankruptcy Code, shall be paid their priority claim in monthly installments over a period of forty-eight (48) months from the Effective Date (which shall be within sixty (60) months of the Petition Date) and payments shall commence on the fifteenth day of the first full month following the Effective Date, with interest at three percent (3%) per annum.

Should the Plan of the Debtors not be confirmed in November 2016, then the duration of the repayment period, currently forty-eight (48) months, shall be reduced by one month for every month after November 2016 that the Debtors' Plan has not been confirmed. For example, if the Plan of the Debtors' is confirmed in January 2017, then the installment period shall be forty-six (46) months. If the Plan of the Debtors is confirmed in April 2016, then the installment period shall be forty-three (43) months. This installment duration is consistent with 11 U.S.C. § 1129(a)(9)(C)(ii).

For feasibility purposes, the Debtors estimate that payments will be in the amount of $255.79 per month to the IRS, and $19.70 per month to the Comptroller of Maryland.

**Unsecured general tax claims** will be treated as provided below in the section relating to "General Unsecured Claims."

D.   **Class 4 – DiTech Financial, LLC:**

(1)   Description:   The Debtors are indebted to DiTech Financial, LLC. ("DiTech") pursuant to a Promissory Note dated May 3, 2006, in the principal amount of $417,000.00. This Note is secured by a Deed of Trust dated May 3, 2006 and recorded in the Queen Anne's County, Maryland Registry which purports to grant a lien against the Debtors' real property commonly known as 118 Prospect Bay Drive West, Grasonville, MD 21638.

The total balance owing to DiTech as of the petition date is $412,219.63 as shown on the proof of claim filed by DiTech on March 18, 2016 [Claims Register No. 5].

(2)   Impairment:   This class will be impaired.

(3)   Treatment:   The Debtors will treat the claim as a fully secured obligation of the Debtors in the amount of $412,219.63. The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

The Debtors will resume regular monthly payments under the terms of the Promissory Note. Additionally, the Debtors will cure the arrears that have arisen after the filing of this case over the sixty (60) months immediately following the Effective Date. Monthly payments, for both the regular monthly payments and the arrears will begin on the 15th day of the first full month following the Effective Date of the Plan, and shall continue monthly until the debt is paid

5

in full. The Debtors can cure these arrears over a period less than sixty (60) months without penalty.

For feasibility purposes, the Debtors estimate that payments will be in the amount of $2,736.35 per month for sixty (60) months until the arrears are cured, and $2,280.29 for the remainder of the plan

### E. Class 5 – Bank of America, N.A.

(1) Description: The Debtors are indebted to Bank of America, N.A. as servicer for Deutsche Bank Trust Company Americas, as Trustee for the Certificate Holders of Dover Mortgage Capital 2005-A Corporation Grantor Trust Certificates Series 2005-A ("BofA") pursuant to a Promissory Note dated July 20, 2004, in the principal amount of $240,781.10. This Note is secured by a Deed of Trust recorded in the Pender County Registry on August 12, 2004, at Book 2451, Page 228, which purports to grant a lien against the Debtors' real property commonly known as 706B South Topsail Drive, Surf City, NC 28445.

The total balance owing to BofA as of the petition date is $290,288.26 as shown on the proof of claim filed by BofA on March 4, 2016 [Claims Register No. 4].

(2) Impairment: This class will be impaired.

(3) Treatment: The Debtors will treat the claim of BofA as a secured obligation of the Debtors in the amount of $245,000.00. This claim will be fully secured in accordance with 11 U.S.C. § 1111(b)(2). The creditor shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full. The Debtors propose to amortize this obligation over a period of 480 months with a fixed interest rate of three-point-five (3.5%) percent per annum.

Monthly payments will begin on the 15th day of the first full month following the Effective Date, and shall continue monthly until the secured claim is paid in full. For feasibility purposes, the Debtors estimate that the principal and interest payments will be in the amount of $949.11 per month.

The loan is currently escrowed and will remain escrowed; with the exception that the amounts required to be paid by the escrow account shall accrue upon the Effective Date. The Debtors are not obligated and are not responsible to repay any escrow advances made by BofA prior to the Effective Date. Additionally, the real property taxes required to be paid from the escrow account shall only begin to accrue for real property taxes first coming due in 2017.

In the event the Debtors sell the real property located at 706B South Topsail Drive, then BofA will be paid their claim amount of $290,288.26 minus all amounts paid to BofA as called for under this class, or the principal balance owed on the secured obligation of $245,000.00, whichever amount is greater.

In consideration for the above treatment, the Debtors will forever waive, release, and discharge any and all claims against BofA that arose prior to the Effective Date, including those claims set forth on the Debtors' Schedule B and included in Adversary Proceeding case no. 16-00146-5-SWH. The Debtors will dismiss with prejudice the Complaint in the aforementioned Adversary Proceeding upon entry of the Confirmation Order.

    F.    **Class 6 – General Unsecured Claims:**

(1)    <u>Description of Class</u>.  This class consists of all allowed, undisputed, non-contingent, unsecured claims listed in the Debtor's petition, Plan, or as otherwise approved by the Court.

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    <u>Treatment.</u>  The approximate total of general unsecured claims based on claims filed or scheduled without dispute as of the date of the filing of this Plan is $9,972.75. The Debtors propose to pay the claims in this class in full with quarterly payments over a period of two (2) years from the Effective Date.

The claims that constitute this class are set forth as follows:

| Claim | Amount |
|---|---|
| Bank of America (account ending in 5530) | $ 2,081.62 |
| Bank of America (account ending in 0770) | $ 4,789.11 |
| Synchrony Bank - Banana Republic | $ 721.57 |
| IRS | $ 2,316.45 |
| Comptroller of Maryland | $ 64.00 |
| Citibank (Claim is disputed and creditor has not filed a POC) | $ 0.00 |
|  | $ 9,972.75 |

Quarterly payments shall commence on the first day of the third full month following the Effective Date, and shall include annual interest at the rate of one percent (1.0%) per annum.  For feasibility purposes, the Debtors estimate that payments will be in the amount of $1,259.52 per quarter. The Debtors may pre-pay payments to this class without penalty.

The Debtors may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§ 547 and 548.  Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

**IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.   This provision is also not intended to reject and does not reject any agreements relating to the management or rental of the Debtor's real property.

7

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A. <u>Assumption of Liabilities.</u>  Except as otherwise provided herein, Reorganized Debtor shall assume liability for and the obligations to make the distributions required to be made to all of the Classes described in Articles II - V of the Plan.

B. The Debtors propose to make payments under the plan from: funds on hand; employment income; and net proceeds from the sale of any assets, if any.

C. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

D. <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

E. <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

F. The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

G. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

H. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

I. Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part

8

of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

J. Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

K. All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

L. <u>Revesting of Assets</u>. The revesting of Assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan. As of the Effective Date, the Plan shall revest in the Debtor all of the Assets of the Debtor and without further documentation, all of the Assets and assumed liabilities of the Debtor, together with all of the related rights, powers, obligations and duties of the Debtor as provided by the United States Bankruptcy Code, this Plan, all orders of the United States Bankruptcy Court, all equitable rights and all laws shall be transferred to the Reorganized Debtor as a successor of the Debtor in all things.

M. <u>Injunction</u>. From and after the Confirmation Date, all holders of "Claims" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor, the Debtor in Possession, or Reorganized Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, the Assets, or Reorganized Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, Reorganized Debtor, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, Reorganized Debtor or the Assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan.

N. <u>Revocation of Plan.</u> The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

O. <u>Authority of the Debtor</u>. The Debtor shall have the authority to implement any term or provision over this Plan. To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry

out any and all acts necessary to fulfill the terms of the Plan. Any authority granted to the Debtor pursuant to this Plan, shall be construed as authority granted to the Debtor.

P.   <u>Organizational Documents</u>.  To the extent the Debtor believes that it is in the best interest of the Reorganized Debtor to do so, the Debtor is authorized to amend organizational operating documents of the Reorganized Debtor as necessary (i) to satisfy the provisions of this Plan, and (ii) to the extent necessary to prohibit the issuance of nonvoting equity securities as required by §1123(a)(6) of the Bankruptcy Code. To the extent any attempt is made to amend the Claim without court authority, after the Effective Date of the Plan, the Reorganized Debtor shall not be held responsible for any actions taken including distributions to Creditors inconsistent with Claims filed or amended after the Effective Date.

Q.   <u>Exemption from stamp tax or transfer tax.</u> Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax or similar tax, pursuant to 11 U.S.C. §1146.

## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan. The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A.   <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.   <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.   <u>Cure Period</u>.  The failure by Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes. Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## VIII. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

      F.      <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS <u>NOT ACCEPTING THE PLAN</u>

      In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

      A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

      B.      <u>Injunction</u>.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XI.  RELEASE OF TITLE TO PROPERTY

      A.      <u>Vehicles</u>.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten

(10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

   B. <u>Real Property</u>. Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII. APPLICATION OF PLAN PAYMENTS

   A. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorney's fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

   B. Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense

account and to otherwise comply with 11 U.S.C. Section 524(i).

## XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4. to determine all controversies and disputes arising under or in connection with the Plan;

5. to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6. to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7. to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8. to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

A. _Survival of Terms_.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. _Successors Bound_.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the

14

holders of claims and interests.

      C.    <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

      D.    <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

      E.    <u>Liens</u>.  All liens remaining in favor of any creditor in this action against the real property conveyed prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

      F.    <u>Incorporation of Disclosure</u>.  All of the terms and conditions of the Disclosure Statement are incorporated herein by reference.

## XV. DISCHARGE

PURSUANT TO THE PROVISIONS OF 11 U.S.C. § 1141(d)(5), AFTER CONFIRMATION OF THEIR CHAPTER 11 PLAN, THE DEBTORS INTEND TO MOVE THIS COURT TO ENTER THEIR DISCHARGE AT THE TIME THEY HAVE COMPLETED ALL PAYMENTS REQUIRED UNDER THE CONFIRMED PLAN TO CLASS 6 – GENERAL UNSECURED CLAIMS. IT IS EXPECTED THAT THIS SHOULD OCCUR APPROXIMATELY 24 MONTHS FROM THE EFFECTIVE DATE OF THE PLAN. HOWEVER, THE DEBTORS, IF SAID CLASS HAS BEEN SATISFIED ACCORDING TO THE PLAN, MAY MOVE AT A TIME BEFORE THE EXPIRATION OF 24 MONTHS.

SAID MOTION WILL BE NOTICED TO ALL INTERESTED PARTIES, AND ALL PARTIES SHALL HAVE THE RIGHT TO FILE OBJECTIONS WITH THE COURT. A HEARING WILL BE HELD BEFORE THE COURT WITH REGARDS TO A MOTION FOR ENTRY OF DISCHARGE ORDER.

Respectfully submitted, this the 7th day of November, 2016.

                                      RICHARD P. COOK, PLLC

                                      /s/ Richard P. Cook
                                      Richard P. Cook
                                      Attorney for the Debtor(s)
                                      NC Bar 37614
                                      7036 Wrightsville Ave, Suite 101
                                      Wilmington, NC 28403
                                      Telephone: (910) 399-3458

Facsimile: (877) 836-6822
Email: CapeFearDebtRelief@gmail.com

/s/ Timothy Richard Moore
Timothy Richard Moore
Debtor

/s/ Heather Davis Moore
Heather Davis Moore
Joint Debtor